**Amy GRIEF, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, Defendant.**

**No. 01 CV 5643(ADS).**

United States District Court, E.D. New York.

Aug. 19, 2002.

Katz & Kleinman, Uniondale, NY by Lawrence Katz, of counsel, for plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, White Plains, NY, pro se.

SPATT, District Judge.

This case arises out of claims by Amy Grief ("Grief" or the "plaintiff") that the law firm Wilson, Elser, Moskowitz, Edelman & Dicker, LLP ("WEMED" or the "defendant"), while acting in the capacity of a debt collector, mailed her a letter that violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962. Presently before the Court is a motion by the defendant to dismiss the class action complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P.") for failing to state a claim upon which relief can be granted.

## I. BACKGROUND

The following facts are taken from the class action complaint ("complaint") and the letter upon which it is based and which is attached to the complaint. *See Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir. 2000) (holding that for the purpose of deciding a motion to dismiss, the complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"). On or about September 18, 2000, Greif received a letter addressed to her from WEMED on the firm's stationary. The subject line of the letter states:

Re: Creditor: HANN FINANCIAL
SERVICE CORPORATION
Amount: $1,962.87 plus attorneys'
fees up to $294.43

The body of the letter reads as follows:

We have received your account from our client for the collection of the balance set forth above.

Unless you notify us within thirty (30) days after the receipt of this notice that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you notify us within thirty (30) days after receipt of this notice that you dispute the validity of this debt, or any portion of it, we will obtain a verification of the debt and mail it to you.

Also, if so requested by you within thirty (30) days after receipt of this notice, we will provide you with the name and address of the original creditor if different from the current creditor above.

If you wish to discuss this matter you may telephone Mr. DeGaetano at (914) 686–5400.

The letter is not signed by an individual, but the name of the firm appears under the phrase, "Very truly yours."

The complaint alleges that the letter violates the FDCPA in three different ways. First, the complaint alleges that the letter violates Sections 1692g(a)(4) and (b) because it fails to inform Grief that she must notify WEMED in writing that the debt is disputed in order to obtain verification of the debt. Similarly, the complaint contends that the letter violates Sections 1692g(a)(5) and (b) because it does not advise Grief that her request for the identity and address of the original creditor must be in writing. Second, the complaint alleges that the letter does not definitively set forth the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1). Third, the complaint alleges that the letter falsely represents that the contact person, Mr. DeGaetano, is an attorney and, therefore, violates 15 U.S.C. §§ 1692e(3) and (10).

In its motion to dismiss the complaint, WEMED argues that the letter's failure to inform Greif that she can preserve certain rights only by disputing the debt in writing does not violate the act because by not requiring a writing, the letter allows the plaintiff to obtain verification of the debt

as well as the identity and address of the creditor through more consumer-friendly means than the writing required by the FDCPA. WEMED also contends that the fact that the letter does not specify the exact amount of attorneys' fees that are part of the debt does not violate the act because the fees are authorized, and their amount was subject to agreement or judicial approval. Lastly, WEMED asserts that it is clear from the letter that Mr. DeGaetano is not an attorney.

## II. *DISCUSSION*

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). As noted above, the Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *See Villager Pond*, at 378.

The purpose of the FDCPA is to protect consumers from abusive, harassing, threatening, misleading and otherwise unscrupulous debt collection practices. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). To this end, the Act requires that "debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir.2001). When a debt collector solicits payment from a consumer, it must, within five days of an initial ·communication, provide the consumer with a written validation notice which must include the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). The Act further provides that

[i]f the consumer notifies the debt collector in writing within the thirty day period ... that the debt, or any portion thereof, is disputed ... the debt collector shall cease collection ... until the debt collector obtains verification of the debt ... and a copy of such verification is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

The Act also bars the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e sets forth a non-exhaustive list of types of false, deceptive, or misleading conduct that violates the Act. Relevant to this action are Sections 1692e(3) and (10), which provide:

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

■■■ The FDCPA is a strict liability statute. *See Russell*, 74 F.3d at 33; *In re Risk Management Alternatives, Inc.*, 208 F.R.D. 493, 500 (S.D.N.Y.2002). A debt collector violates the Act by failing to provide the information it requires, *see De-Santis*, 269 F.3d at 161, and "a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell*, 74 F.3d at 33. Nevertheless, "a debt collector may escape liability if it can demonstrate that its violation of the Act was unintentional and a result of a bona fide error despite procedures to avoid the error." *Russell*, 74 F.3d at 36. Notably, these unintentional acts are a defense to

be raised against a claimed violation, and are insufficient to defeat a motion to dismiss the complaint pursuant to Rule 12(b)(6). *See Russell*, 74 F.3d at 36.

In determining whether a debt collector violated the Act, courts use "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Russell*, 74 F.3d at 34; *see Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir.1998). The test is not how an individual with the "astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer ... understands the notice he or she receives." *Id.* The application of the least-sophisticated-consumer standard serves the Act's purpose of "limiting the 'suffering and anguish' often inflicted by independent debt collectors." *Id.* Indeed, the purpose of the standard is "to ensure that the FDCPA protects all customers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993).

Accordingly, "[e]ven if a debt collector conveys the required information, the collector nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *De-Santis*, 269 F.3d at 161; *see Russell*, 74 F.3d at 35 ("It is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer—Congress intended that such notice be clearly conveyed."). Put differently, a notice containing "language that 'overshadows or contradicts' other language informing a consumer of her rights ... violates the Act." *Russell*, 74 F.3d at 34 (citing *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991)). Language is "overshadowing or contradictory if it would make the least sophisticated

consumer uncertain as to her rights." *Russell,* 74 F.3d at 35; *see Savino,* 164 F.3d at 85. "Thus, a debt collector violates the Act if its communication is 'reasonably susceptible to an inaccurate reading' of the required message." *DeSantis,* 269 F.3d at 161 (quoting *Russell,* 74 F.3d at 35).

### A. The Writing Requirement, Sections 1692g(a)(4), (a)(5), and (b)

■ Applying the rules and standard set forth above to the facts of this case, the Court finds that the complaint states a claim for violations of Sections 1692g(a)(4) and (a)(5). Those sections of the FDCPA clearly requires that a validation notice contain: (1) a statement that if the consumer notifies the debt collector *in writing* that the debt is disputed, the debt collector will obtain verification of the debt; and (2) a statement that if the consumer sends the debt collector a *written request* for the name and address of the original creditor, the debt collector will provide that information. *See* 15 U.S.C. §§ 1692g(a)(4), (a)(5). WEMED's validation notice only requires the consumer to notify the firm that she disputes the debt or requests the name and address of the original creditor. The letter does not mention that the notice be in writing. Any consumer, not simply the least sophisticated consumer, who read this letter would not know that to secure her right to obtain verification of the debt and the identity of the original creditor, her dispute of the debt and request for the identity of the original creditor must be in writing. A consumer could certainly interpret this letter to mean that she could obtain verification of the debt or the identity of the original creditor by calling Mr. DeGaetano at the telephone number provided on the letter. Of course, this is the not the case. *See* 15 U.S.C. §§ 1692g(a)(4), (a)(5). Without a statement that these requests must be in writing, the least sophisticated consumer is not simply uncertain of her rights under the statute, *see Savino,* 164 F.3d at 85; *Russell,* 74 F.3d at 35, she is completely unaware of them.

In addition, a consumer who is not informed of the writing requirements would be unable to avail herself of the protections afforded by Section 1692g(b). Although the FDCPA does not require the debt collector to inform the consumer of the benefits provided by Section 1692g(b), "[i]f the consumer notifies the debt collector in writing ... that the debt, or any portion thereof, is disputed, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or ... the name and address of the original creditor" and mails the same to the consumer. 15 U.S.C. § 1692g(b). Thus, if debt collector does not inform the consumer that a debt dispute must be in writing, the consumer could dispute the debt during a telephone call to the debt collector, but the debt collector would not be required to cease its collection efforts and the consumer would not benefit from the protections afforded by the FDCPA.

The defendant argues that its notice does not violate the FDCPA because by not requiring a writing, the notice allows the consumer to dispute the debt and obtain the identity of the original debtor by doing less than the statute requires. The defendant also asserts that it would have afforded the plaintiff all of the rights and protections of the FDCPA even if she did not submit a written dispute or request. Although the defendant's notice may have been well-intended, the FDCPA is a strict liability statute, and the debt collector violates the Act by failing to provide the information it requires. *See DeSantis,* 269 F.3d at 161. In addition, WEMED's intent is not relevant to the analysis of

whether a notice violates the statute. *See Russell,* 74 F.3d at 33. Accordingly, the Court finds that the complaint states a claim for violations of Sections 1692g(a)(4), (a)(5), and (b), based on the defendant's failure to include the writing requirement in the validation notice.

### B. The Amount of the Debt, Section 1692g(a)(1)

■ The Court also finds that the complaint states a claim for a violation of Section 1692g(a)(1) in its assertion that the amount of the debt, as set forth in the letter, is unclear. The notice states, "Amount: $1,962.87 plus attorneys' fees up to $294.43." Assuming that the least sophisticated consumer would realize, based on prior notices from the creditor, that the sum of $1,962.87 represents the amount of the original debt, she could be unclear as to the total sum of money she owes after reading this notice. By using the phrase, "up to," WEMED indicates that the amount owed ranges from the sum of $1962.87 up to $2257.30. Thus, the least sophisticated consumer is presented with a variety of amounts of the debt, rather than simply the amount of the debt, which is required by 15 U.S.C. § 1692g(a)(1). She might understand that payment of $1962.87 would fulfill her obligation, when in fact, that sum might not. On the other hand, she might believe that a check in the amount of $2257.30 would satisfy her debt when that sum would constitute an overpayment. WEMED's description of the amount of the debt could present the least sophisticated consumer with, at best, an unclear and, at worst, contradictory message regarding the amount of money she owes. In light of the fact that Congress intended proper debt validation notices to be clearly conveyed, the Court finds that the complaint states a claim for a violation of Section 1692g(a)(1) in its assertion that the amount of the debt is unclear.

In reaching this conclusion, the Court does not find that WEMED's inclusion of attorney's fees, in an of itself, violates the FDCPA. Indeed, if the attorney's fees are part of the debt Greif owes under the contract and are permitted by state and federal law, conclusions that this Court does not reach, their amount must be stated in the validation notice. *See* 15 U.S.C. § 1692g(a)(1). Rather, it is the firm's use of the phrase "up to" and the effect those words have on the total sum that might be owed that lead this Court to conclude that the complaint states a claim for a violation of 15 U.S.C. § 1692g(a)(1).

### C. The False Representation That An Individual Is An Attorney, 15 U.S.C. §§ 1692e(3), (10)

■ The complaint also alleges that WEMED's letter violates the FDCPA in that it falsely implies that the contact person at the defendant's firm is an attorney. Section 1692e(3) makes it a violation of the FDCPA to falsely represent or imply that any individual is an attorney in connection with the collection of a debt. The Court finds that the letter does not imply to the least sophisticated consumer that Mr. De-Gaetano is an attorney. Although the letter does not provide Mr. DeGaetano's title, it also does not state that he is an attorney. The abbreviation, "Esq.," does not appear after his name, and the words counsel and lawyer, are not used in the letter at all. The word "attorney" only appears in connection with the phrase "attorneys' fees", which is used at the top of the letter, far removed from Mr. DeGaetano's name which appears at the bottom of the letter. The firm stationary, on which the letter is written, does not include the names of attorneys or other firm personnel. As such, the least sophisticated consumer would not match Mr. DeGaetano's

name to the name of an attorney in the firm.

In fact, nothing on the letter even indicates that WEMED is a law firm. The name of the firm, "Wilson, Elser, Moskowitz, Edelman & Dicker, LLP," appears at the top of the letterhead, followed by the firm's White Plains address and telephone number. Directly beneath this contact information, the reader finds the firm's 16 other offices and six affiliate offices as well as the firm's web address is listed. In addition, the content of the letter does not suggest that WEMED is a law firm. Accordingly, with reasonable certainty, the Court concludes that the least sophisticated consumer would not know that WEMED is a law firm. As such, the Court finds that the same consumer would not conclude that Mr. DeGaetano's association with WEMED renders him a lawyer.

In sum, the Court finds that the least sophisticated consumer would not believe that the person mentioned in the notice from WEMED is a lawyer. Therefore, the Court concludes that the complaint fails to state a claim for a violation of Section 1692e(3). Because the plaintiff's claim that the defendant violated Section 1692e(10) is based on the alleged violation of Section 1692e(3), the Court finds that the complaint also fails to state a claim for a violation of Section 1692e(10).

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion to dismiss the complaint is **DENIED,** in regard to the plaintiff's claims that the defendant violated 15 U.S.C. §§ 1692g(a)(1), (a)(4), (a)(5), and (b); and it is further

**ORDERED,** that the defendant's motion to dismiss the complaint is **GRANTED,** in regard to the plaintiff's claims that the defendant violated 15 U.S.C. §§ 1692e, 1692e(3), and (10), and those claims are **DISMISSED;** and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge Michael L. Orenstein forthwith to set a schedule for discovery.

SO ORDERED.