# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2017

No. 17-2186-cv

YVETTE VANGORDEN,
*Plaintiff-Appellant*,

v.

SECOND ROUND, LIMITED PARTNERSHIP,
*Defendant-Appellee*.

On Appeal from the United States District Court
for the Eastern District of New York

ARGUED: MARCH 6, 2018
DECIDED: JULY 27, 2018

Before: CABRANES and RAGGI, *Circuit Judges*, Vilardo, *District Judge*.[*]

---

[*] Judge Lawrence J. Vilardo, of the United States District Court for the Western District of New York, sitting by designation.

———————

On appeal from a judgment of the United States District Court for the Eastern District of New York (Feuerstein, *J.*), plaintiff challenges the dismissal of her Fair Debt Collection Practices Act complaint, which charges defendant with false representations and unfair practices in seeking payment on an already settled debt. *See* 15 U.S.C. §§ 1692e(2), (10), 1692f(1). Plaintiff argues that the district court erred in concluding that she could not state a claim because defendant had advised her of her right to dispute the debt, *see id.* § 1692g, which she did not do.

VACATED AND REMANDED.

———————

> DAVID N. MCDEVITT, Thompson Consumer Law Group, PLLC, Mesa, Arizona, *for Plaintiff-Appellant*.
>
> SHANNON MILLER (Thomas Robert Dominczyk, Donald S. Maurice, Jr., Maurice Wutscher, LLP, Flemington, New Jersey, *on the brief*), Maurice Wutscher, LLP, Wayne, Pennsylvania, *for Defendant-Appellee*.

———————

REENA RAGGI, *Circuit Judge*:

Plaintiff consumer Yvette Vangorden sued defendant debt collector Second Round, Limited Partnership ("Second Round"), for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by sending her a letter representing that she still owed money on a debt that she had settled five years earlier, and requesting

payment of that debt. She now appeals from the June 21, 2017 judgment of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, *Judge*), dismissing her complaint for failure to state a claim. *See Vangorden v. Second Round, Ltd. P'ship*, No. 16-CV-6227(SJF)(AKT), 2017 WL 4350438, at *4 (E.D.N.Y. June 20, 2017). Because we conclude that Vangorden has alleged plausible FDCPA claims, we vacate the judgment of dismissal and remand this case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

We draw the stated facts from Vangorden's complaint and the letters attached thereto. *See* Fed. R. Civ. P. 10(c); *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (acknowledging that, on motion to dismiss, court may consider documents attached to complaint).

## I. Settlement of the Underlying Debt

In 2011, New York resident Yvette Vangorden owed a personal credit card debt of $1,631.61 (the "Debt") to Synchrony Bank. Synchrony Bank offered to settle the Debt for $571.20, informing Vangorden, in an October 27, 2011 letter to her attorney, that upon receipt of that proposed settlement amount, it would consider the account paid and would report to credit bureaus that "the 'account [was] paid in full for less than the full balance.'" Compl. Ex. A.[1] On November 14, 2011, plaintiff paid Synchrony Bank $571.20, thus satisfying the terms of settlement set by her creditor.

---

[1] The letter is from GE Capital Retail Bank, a predecessor of Synchrony Bank.

## II.   Second Round Pursues Payment of the Debt

Almost five years later, on May 25, 2016, Second Round, which "purchases debts allegedly in default with the intent of collecting the debts for profit," *id.* at ¶19, purchased Vangorden's settled Debt from Synchrony Bank.

One month later, on June 22, 2016, Second Round sent Vangorden a letter (the "June Letter"),[2] which listed a "current outstanding balance" on the Debt of $1,365.39 and requested payment in that amount by use of a "detachable remittance voucher" or "online payment application."  *Id.* at Ex. B.  The letter also included a toll-free contact telephone number and the following notice:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

*Id*.  The quoted text tracks the statutory notice that debt collectors must provide consumers regarding their right to dispute the validity of a debt.  *See* 15 U.S.C. § 1692g(a).  Finally, the June Letter warned Vangorden that Second Round "may report information about [her] account to credit bureaus," and that such information "may already appear on [her] credit report."  Compl. Ex. B.

---

[2] Although addressed to both Vangorden and a law firm, the June Letter was sent directly to Vangorden.  It was the first, and only, communication between Vangorden and Second Round.

Vangorden did not notify Second Round that she disputed the Debt.

## III.    Procedural History

On November 9, 2016, Vangorden filed this lawsuit, charging Second Round with violating the FDCPA by falsely representing the character, amount, and legal status of the Debt, *see* 15 U.S.C. § 1692e(2); using false representations in connection with the collection of a debt, *see id.* § 1692e(10); and attempting to collect a debt amount not expressly authorized by agreement or law, *see id.* § 1692f(1).    In her complaint, Vangorden asserts that "the least sophisticated consumer would be confused as to whether she owed any money on the Debt" and, "[r]ather than seek legal help, . . . may feel intimidated and simply pay the amount demanded."    Compl. ¶¶37–38.    She seeks statutory and actual damages, as well as attorneys' fees, costs, and interest.    *See* 15 U.S.C. § 1692k.

On June 20, 2017, the district court granted Second Round's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).    The district court determined that, even if the June Letter misrepresented the settled Debt as outstanding, Vangorden could not state a plausible FDCPA violation because the same letter notified Vangorden of her right to dispute the Debt, which she failed to do.    *See Vangorden v. Second Round, Ltd. P'ship*, 2017 WL 4350438, at *4.

Vangorden timely appealed.

**DISCUSSION**

## I.     Standard of Review

This court "review[s] *de novo* a district court's grant of a motion to dismiss." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015). To survive a motion to dismiss, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In deciding whether a complaint satisfies this standard, we "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted).

## II.     Sections 1692e and 1692f Claims

In deciding whether Vangorden states a plausible FDCPA claim, we begin with the text of the three statutory sections on which she relies. *See Federal Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 141 (2d Cir. 2013) ("In construing a statute, we begin with the plain language, giving all undefined terms their ordinary meaning."). First, § 1692e(2)(A) prohibits "[t]he false representation of the character, amount, or legal status of any debt." Second, § 1692e(10) prohibits "[t]he use of any false representation . . . to collect or attempt to collect any debt." Finally, § 1692f(1) prohibits "[t]he collection of any amount [on a debt] . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Precedent instructs us to construe FDCPA text liberally to effectuate the overriding statutory purpose, which is "to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

6

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting 15 U.S.C. § 1692(e)). Thus, this court has held that the FDCPA sections here at issue are not mutually exclusive because, although they "share the goal of protecting consumers from abuse by debt collectors," they each target "different type[s] of misconduct." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017). While § 1692e "mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen," § 1692f aims at "practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Id.* at 136. Toward these ends, § 1692e and § 1692f each proscribe a "non-exhaustive" list of specific unfair practices, with this court recognizing that the same conduct may support claims brought under multiple subsections. *Id.* at 135–36.

The conduct here at issue is Second Round's transmittal to Vangorden of its June Letter representing that she had an outstanding Debt obligation of $1,365.39 and its request for payment of that Debt. Vangorden alleges that the letter misrepresented her indebtedness because she had settled the Debt some five years earlier by paying the creditor its requested settlement amount of $571.20. On review of a motion to dismiss, we must assume the truth of these facts. When we make that assumption here, we conclude that Vangorden plausibly pleaded that the June Letter falsely represented "the character, amount, or legal status" of her Debt in violation of § 1692e(2). The FDCPA is "a strict liability statute" and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional. *See Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d at 134. In sum, because Vangorden pleaded

facts plausibly asserting Second Round's misrepresentation of her Debt obligation, her § 1692e(2) claim should not have been dismissed under Fed. R. Civ. P. 12(b)(6). *See generally Easterling v. Collecto, Inc.*, 692 F.3d 229, 234–35 (2d Cir. 2012) (concluding that collection letter's statement that debt was "'ineligible for bankruptcy discharge'" was false because plaintiff "at all times fully retained her right to seek bankruptcy discharge"); *cf. DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F. App'x 7, 9 (2d Cir. 2015) (summary order) (concluding that "assertion that rent was unpaid was not false" for purposes of § 1692e claim because governing law was unclear as to whether landlord could lawfully refuse payment from co-tenant).

Further, because the June Letter, after allegedly misstating Vangorden's Debt obligation, requested payment of the Debt, we conclude that Vangorden has plausibly alleged that Second Round both used a "false representation" in a debt collection effort in violation of § 1692e(10), and attempted to collect a debt amount not "expressly authorized by the agreement creating the debt or permitted by law" in violation of § 1692f(1). *See Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d at 135 (identifying "collection of an invalid debt" as one of § 1692f's "list of unfair practices"). As to the latter, this court has recognized that § 1692f's numbered subsections are "examples" of conduct manifesting the "unfair or unconscionable" means of debt collection identified in the section's first sentence. *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 125 (2d Cir. 2016). Thus, by pleading that defendant attempted to collect an amount not authorized by agreement or permitted by law, the plaintiff has stated a plausible claim under § 1692f(1) without need for further allegations of unfairness or unconscionability. *See generally Campbell v. MBI Assocs.*, 98 F. Supp. 3d 568, 582 (E.D.N.Y. 2015) (observing that "[b]y its terms, § 1692f(1) prohibits the collection of

*any* amount which is not expressly authorized by the agreement creating the debt or permitted by law," and holding that § 1692f(1) claim does not require demonstration of violation of "general proscription" on use of "unfair or unconscionable" collection means set forth in first sentence of section (emphasis in original)).

Our conclusion that Vangorden's pleadings state plausible FDCPA claims within the statutory text is consistent with rulings by our sister circuits. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014) (holding that where facts construed most favorably to plaintiff indicated that debt obligation was less than amount stated in defendant's letter, plaintiff stated plausible claim for misrepresentation of debt amount in violation of § 1692e(2), (10)); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 451 (6th Cir. 2014) (holding that where defendant lacked right to collect interest on debt, statement to contrary was false representation of character and amount of debt); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014) (affirming judgment for plaintiff where statement that debt had not been satisfied was false on face and, thus, misrepresented character, amount, and legal status of debt).

On this appeal, Second Round does not contest Vangorden's allegation that the June Letter misrepresented her Debt obligation. Nor does it dispute that such a misrepresentation, coupled with a request for payment, can fall within the plain language of the three cited statutory provisions. Rather, Second Round argues that, here, its inclusion in the June Letter of the debt dispute notice mandated by § 1692g both (1) takes any technical falsity as to the amount or character of the Debt outside the sphere of actionable misrepresentation contemplated by § 1692e and § 1692f; and (2) precludes even the least sophisticated consumer from being

misled as to the Debt at issue. We proceed to explain why these arguments do not persuade.

### III. Second Round's Section 1692g Notice Does Not Preclude Vangorden from Stating Plausible Claims under Sections 1692e and 1692f

As already noted *supra* at 4, the FDCPA requires debt collectors to advise consumers of their right to dispute an asserted debt in writing "within thirty days after receipt of the notice." 15 U.S.C. § 1692g(a)(3). The consumer must further be advised that if it does not do so, "the debt will be assumed to be valid by the debt collector." *Id.* But if the consumer does dispute the debt, the debt collector "will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." *Id.* § 1692g(a)(4). Moreover, the debt collector is statutorily obliged to "cease collection of the debt" until it "obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor," and mails that information to the consumer. *Id.* § 1692g(b).

Second Round argues that it is evident from this statutory scheme—which affords consumers the right to dispute debts, precludes efforts to collect disputed debts until verified, and affords a presumption of validity to undisputed debts—that the FDCPA does not obligate debt collectors to verify debts *prior to s*ending initial communications to consumers. It therefore follows that there can be no FDCPA liability for an initial debt misrepresentation that is accompanied by a § 1692g notice of the right to dispute.

Like the Third and Fourth Circuits, we reject this argument because nothing in the text of the FDCPA suggests that a debtor's

ability to state a § 1692e or § 1692f claim "is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d at 392 [4th Cir.]; *see McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d at 247–48 [3d Cir.] (holding that "statute's text provides no indication that Congress intended to require debtors to dispute their debts under § 1692g before filing suit under § 1692e"). The language of § 1692g is conditional, identifying a debt collector's obligations "*[i]f*" the consumer disputes a debt. 15 U.S.C. § 1692g(b) (emphasis added). The Third Circuit has observed that such language suggests that "disputing a debt" pursuant to § 1692g is an "option[]" available to consumers, not a condition precedent to the consumer bringing a § 1692e or § 1692f action. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d at 247. If, instead, Congress had "intended for a debt collector's liability under the FDCPA to hinge upon a debtor's" first disputing the debt pursuant to § 1692g, one might expect "it would have so indicated with conspicuous language to that effect." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d at 392. This conclusion comports with the remedial nature of the statute and its solicitude for the least sophisticated consumer. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d at 248 ("Imposing a § 1692g dispute prerequisite in the absence of any statutory language requiring it would undermine the FDCPA's protection of unsophisticated debtors, who would have no reason to suspect that they would be prevented from filing suit concerning deceptive communications as a consequence of failing to invoke the optional statutory validation procedure."); *see generally Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (holding that FDCPA claims should be reviewed by considering "how the least sophisticated consumer"—not "average, everyday, common consumer—understands the notice").

In urging otherwise, Second Round points to the FDCPA's "specific presumption that a debt is valid, subject to a properly conveyed dispute of its validation." Appellee Br. 14. In fact, what the relevant text does is impose a notice obligation on the debt collector to inform the consumer that, if the consumer does not dispute the debt, it "will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). We do not think such a notice requirement can reasonably be construed to require extension of the presumption to other sections of the FDCPA—such as § 1692e and § 1692f—that make no mention of it.[3] *Cf. Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (observing that "when Congress includes particular language in one section of statute but omits it in another . . . this Court presumes that Congress intended a difference in meaning" (internal quotation marks and alterations omitted)).

In any event, Second Round's argument is undermined by language in the FDCPA stating that a consumer's "failure . . . to dispute the validity of a debt under [§ 1692g] may not be construed by any court as an admission of liability by the consumer." 15 U.S.C. § 1692g(c). Given this explicit protection of consumers who do not dispute their debts, "it would be anomalous to conclude that the debtor forfeits his or her ability to bring a lawsuit under the FDCPA simply because the debtor failed to invoke § 1692g's discretionary validation procedures." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d at 393. Indeed, to conclude otherwise would have the perverse effect of "immunizing" a debt collector's false statements after 30 days if a consumer does not dispute the debt within that time frame. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d at 248; *see*

---

[3] We emphasize that § 1692g notice is a statutory requirement, *see* 15 U.S.C. § 1692g(a), not, as Second Round appears to suggest, a safe harbor.

*generally* 15 U.S.C. § 1692k(d) (establishing one-year statute of limitations for § 1692e and § 1692f claims).

Second Round nevertheless maintains that Vangorden's receipt of a § 1692g notice must be held to foreclose her § 1692e and § 1692f claims if § 1692g is not to be rendered "superfluous." Appellee Br. 7; *see Carlin v. Davidson Fink LLP*, 852 F.3d at 213 (recognizing "that courts should avoid statutory interpretations that render provisions superfluous" (internal quotation marks omitted)). The concern is misplaced. As the Third Circuit has observed, consumers who can challenge misrepresented debt obligations under other provisions of the FDCPA still have an incentive to dispute debts pursuant to § 1692g because that provision "enable[s] debtors to cheaply and quickly resolve disputes with debt collectors," as well as to "facilitate[] the exchange of information, [which] may ultimately help debtors bolster their FDCPA claims." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d at 248.

*Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496 (E.D.N.Y. 2002), relied on by both Second Round and the district court, although not controlling, took a different view. It concluded that consumers who ignored § 1692g validation procedure could not pursue FDCPA claims because "[t]o allow such lawsuits would discourage use of the detailed statutory procedure." *Id.* at 500–01. The district court reasoned that Congress "likely" included § 1692g's validation procedures in the FDCPA to "avoid . . . litigation." *Id.* at 500 ("The specific procedure for debt validation must have been intended to avoid FDCPA litigation based solely on the debt's validity as communicated to the collection agency by the creditor."). That is not, however, what Congress said when it enacted the FDCPA. Instead, Congress observed that § 1692g's validation procedures

would "eliminate the recurring problem of debt collectors . . . attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. In sum, contrary to *Bleich*, the relevant legislative history focused on minimizing certain conduct by debt collectors, not enforcement actions by consumers.[4]

Our rejection of Second Round's argument is further reinforced by § 1692k(c), which states that a "debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that [a] violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). In short, the FDCPA's text does not make consumer exhaustion of § 1692g dispute procedures a condition precedent to a consumer § 1692e or § 1692f claim; rather, the statutory language affords debt collectors an affirmative defense to such claims if they can show that their actions were bona fide and not intentional.[5] Thus, we need not quarrel with

---

[4] Other district court cases relied on by Second Round are equally unpersuasive insofar as they rely on *Bleich*'s reasoning or assume an FDCPA *mens rea* requirement that we have since rejected. *See Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d at 134.

[5] Thus, Second Round cannot fault Vangorden for "mak[ing] no allegation that Second Round had knowledge, or was otherwise aware," that her Debt "had allegedly been settled with Synchrony," Appellee Br. 25, because the FDCPA does not require a consumer to plead *mens rea* to state a claim; rather, it allows the debt collector to avoid liability upon its proof that the violation was not intentional or that its actions were taken in good faith, *see Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) (acknowledging that "debt collector's false statement is presumptively wrongful" under FDCPA "even if the speaker is ignorant of the truth; but a debt collector that exercises care to avoid making false statements has a defense under § 1692k(c)"). Insofar as the parties' briefs dispute *mens rea,* that issue is properly pursued on remand. Our task on review of a Rule 12(b)(6) motion "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks omitted).

Second Round's assertion that the FDCPA "'anticipates that not all debts can or will be verified'" and that, "'in the real world, creditors and debt collectors make mistakes, and sometimes initiate collection activities against persons who do not owe a debt.'" Appellee Br. 15 (quoting *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997)). We conclude only that the protection the FDCPA affords debt collectors in those circumstances is the affirmative defense stated in § 1692k(c), not an immunity from suit inferred from the dispute notice provision of § 1692g.[6]

Accordingly, we conclude that neither Second Round's compliance with § 1692g in allegedly misstating a Debt obligation to Vangorden, nor Vangorden's failure to avail herself of § 1692g verification procedures, precluded her as a matter of law from stating plausible FDCPA claims under § 1692e and § 1692f.

## IV. Vangorden's Claims Do Not Fail the Least Sophisticated Consumer Standard

Second Round argues that even if a consumer who fails to act on § 1692g notices could state plausible § 1692e and § 1692f claims, Vangorden has not done so here because even the "least sophisticated consumer" could not be misled by the June Letter. The pleadings do not support that conclusion.

---

[6] In any event, *Jang* does not help Second Round because it is inapposite on its facts. Plaintiffs there alleged that defendants mailed dunning letters containing § 1692g notices knowing "that they would never provide verification" for disputed debts because they would simply return those accounts to creditors. *Jang v. A.M. Miller & Assocs.*, 122 F.3d at 482. The *Jang* court dismissed plaintiff's false statement claim, reasoning that the collection agencies had "technically complied" with the FDCPA because § 1692g does not require verification; instead, a debt collector can simply cease collection of a disputed debt. *Id.* at 481. By contrast, Vangorden's claims are based on alleged misrepresentations as to her debt obligations.

"[A] collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d at 75 (internal quotation marks omitted); *see Russell v. Equifax A.R.S.*, 74 F.3d at 35. Here, the June Letter's only interpretation is misleading; it told Vangorden that she had an outstanding debt obligation. In fact, that obligation had been settled some five years earlier. This court has held that even a partial misstatement of a consumer's debt obligation can be misleading under the FDCPA. *See Avila v. Riexinger & Assocs., LLC*, 817 F.3d at 76 (observing that accurate statement of balance due, "without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account"). The conclusion applies with even more force where a collection notice does more than misstate the extent of a consumer's debt obligation; it misstates the very existence of such an obligation.

Nor is such a misrepresentation rendered less false or misleading by the fact that the debt had existed at one time, but had been settled by the consumer. As Vangorden persuasively argues, upon receipt of a debt collection letter misstating a debt obligation and requesting payment, a consumer—and, particularly, a least sophisticated consumer—might question whether she had indeed satisfied the debt and make payment anew "out of fear and confusion." Appellant Br. 8; *see Russell v. Absolute Collection Servs., Inc.*, 763 F.3d at 395 (observing that "hypothetical least sophisticated consumer" would interpret statement that account was outstanding "to mean that the debt remains legally due and owing[,] . . . [despite plaintiff having] fully paid her debt"; thus, because statement that debt "'has not been satisfied' is false on its face and misrepresents the character, amount, and legal status of the debt," plaintiff states valid

16

FDCPA claim (some internal quotation marks and alterations omitted)).

Section 1692g notice that the consumer could dispute the debt, thereby triggering verification obligations for the debt collector, warrants no different conclusion because, at the same time that Second Round gave Vangorden such notice, it also told her that it "may report information about your account to credit bureaus," and that such "information *may already appear* on your credit report." Compl. Ex. B (emphasis added). A least sophisticated consumer who was so advised might understand her right to dispute the misstated debt but, nevertheless, pay the debt out of fear that there was already an adverse effect on her credit that would continue as long as the obligation remained outstanding. A § 1692g notice hardly mitigates a debt misrepresentation when it sends this sort of "contradictory message" to the consumer. *Russell v. Equifax A.R.S.*, 74 F.3d at 34 (holding that least sophisticated consumer could be misled by communication that provided § 1692g debt dispute notice, but also advised consumer that if he did not dispute claim but, rather, paid it within 10 days, agency would not post collection to his credit file).

In urging otherwise, Second Round argues that its own intent bears on how a least sophisticated consumer would understand the June Letter. Second Round fails to demonstrate how Vangorden would have understood that its attempt to collect the Debt here was in good faith. *Cf. Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 226 (2d Cir. 2015) (observing that court was "hard put" to understand how consumer would understand debt collector's professed purpose for sending letter at issue). No matter. As we have already explained, *supra* at 14–15, Second Round's intent is relevant not on a motion to dismiss, but only as an affirmative defense.

17

Thus, notwithstanding the June Letter's inclusion of § 1692g notice, we conclude that the letter could mislead a least sophisticated consumer about the misstated Debt obligation. We, therefore, adhere to our conclusion that Vangorden has pleaded plausible § 1692e and § 1692f claims, which should not have been dismissed.

## CONCLUSION

To summarize, we conclude as follows:

1.    Where, as here, a debt collector misreports a debt obligation to a consumer that she no longer owes, and requests payment on that debt, the consumer plausibly alleges violations of 15 U.S.C. § 1692e and § 1692f, notwithstanding the fact that the debt collector advised the consumer of her right to dispute the debt as required by *id.* § 1692g, and that the consumer did not exercise that right.

2.    Inclusion of 15 U.S.C. § 1692g notice here does not prevent plaintiff from plausibly pleading that, on a least sophisticated consumer standard, defendant's debt communication was misleading and unfair under *id.* § 1692e and § 1692f.

3.    Because the FDCPA is a strict liability statute, a consumer is not required to plead *mens rea* to state plausible FDCPA claims. Rather, a debt collector's intent is relevant as an element of the affirmative defense afforded by 15 U.S.C. § 1692k(c).

Accordingly, we VACATE the judgment of the district court dismissing plaintiff's FDCPA complaint, and we REMAND the case to the district court for further proceedings consistent with this opinion.